<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHAN G.A.[1], | : : | |
| Petitioner, | : : | Civil Action No. 21-12972 (JMV) |
| v. | : : | OPINION |
| GUY CIRILLO, | : : | |
| Respondent. | : : : | |

**VAZQUEZ, District Judge:**

Presently before the Court is Petitioner's counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging his ongoing immigration detention since March 25, 2020. (D.E. 1.)  The Government filed an Answer opposing relief, (D.E. 5), and Petitioner filed a Reply (D.E. 7).  For the reasons stated below, the Court will grant the Petition and direct the Government to provide Petitioner with an individualized bond hearing before an immigration judge within twenty-one days of the date of the accompanying Order.

**I.      BACKGROUND**

Petitioner is a native and citizen of the Dominican Republic, who was admitted to the United States on or about June 20, 2004, as a legal permanent resident. (D.E. 5-1, at 1.)  On June 29, 2018, Petitioner was convicted of conspiracy to commit unlawful taking in violation of N.J.S. §§ 2C:5-2a(1) and 2C:20-3A, and on September 24, 2018, he was convicted of theft by unlawful

---

[1] The Petitioner is identified herein only by his first name and the first initials of his surnames in order to address certain privacy concerns associated with § 2241 immigration cases.  The identification of Petitioner in this manner comports with recommendations made by the Judicial Conference of the United States' Committee on Court Administration and Case Management.

taking in violation of N.J.S. § 2C:20-3A. (D.E. 1-3, at 1, 4.) The state courts sentenced Petitioner to five and three years, respectively, to run concurrently. (D.E. 1, at ¶ 17.)

On March 20, 2019, as a result of the convictions, Immigration and Customs Enforcement ("ICE") served Petitioner with a Notice to Appear, which charged him as removable under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act for having aggravated felony convictions as defined in Section 101(a)(43)(G). (D.E. 5-1, at 1.)

As part of the Department of Homeland Security's Institutional Hearing Program, Petitioner's immigration proceedings began while he was still serving his criminal sentence at the Garden State Youth Correctional Facility. (D.E. 1, at ¶ 17.) Under the program, Petitioner appeared by video teleconference. On May 24, 2019, Petitioner appeared for a master calendar hearing, and the immigration judge adjourned the matter until July 5, 2019, to provide Petitioner with time to obtain counsel. (D.E. 1, at ¶ 18.) Ultimately, Petitioner was unable to retain counsel and proceeded *pro se* throughout his removal proceedings. (*Id*.) On July 5, 2019, the immigration judge proceeded with the pleadings. Petitioner admitted the factual allegations in the Notice to Appear and conceded the charge of removability. (D.E. 1-5, at 3–8.) Thereafter, the judge advised Petitioner that he could seek deferral of removal under the United Nations Convention Against Torture Act, and Petitioner stated that he wished to pursue that relief. (*Id*. at 9.)

After a number of adjournments due to technical issues, Petitioner had his individual merits hearing on February 25, 2020. (D.E. 1, at ¶ 22.) The hearing also had technical issues, and Petitioner was unable to see the Government's attorney, the immigration judge, or any evidence in question. (*Id*.) At the conclusion of the hearing, the immigration judge took the matter under review, and on May 26, 2020, denied Petitioner's application for relief and ordered his removal to the Dominican Republic. (D.E. 1, at ¶ 25.)

A few months prior, on or about March 25, 2020, the State of New Jersey released Petitioner from state custody into ICE custody. (*Id*. at ¶ 23.) ICE detained and continues to detain Petitioner under the mandatory detention provisions of 8 U.S.C. § 1226(c). (D.E. 1, at ¶ 35.) Petitioner filed his first appeal on June 17, 2020, with the Board of Immigration Appeals ("BIA") and filed his appellate brief on September 9, 2020. (*Id*. at ¶ 26.)

Petitioner filed the instant § 2241 Petition on June 24, 2021.  Petitioner argues that his prolonged detention violates his due process rights under the Fifth Amendment. (*Id*. at 16–18.) In terms of relief, Petitioner requests, among other things, that the Court order a bond hearing.  In response, the Government maintains that Petitioner's detention remains lawfully permissible and that his detention continues to serve the purpose of mandatory detention under § 1226(c). (D.E. 5, at 9–13.)

After the briefing in this case, on December 9, 2021, the BIA dismissed Petitioner's appeal, and he appealed that decision to the Third Circuit. (D.E. 9, at 1.) On December 16, 2021, the Third Circuit issued an order temporarily staying Petitioner's deportation. (*Id*.)  His appeal before the Third Circuit remains pending. (*Id*.)  As of the date of this Opinion, ICE has detained Petitioner for approximately twenty-two months.

**II.     ANALYSIS**

Under 28 U.S.C. § 2241(c)(3), a court may grant habeas relief to an immigration detainee who "is in custody in violation of the Constitution or laws or treaties of the United States."  In the present case, Petitioner contends that his continued detention has become so prolonged that it amounts to an unconstitutional application of 8 U.S.C. § 1226(c).  Under that statute, Petitioner is subject to mandatory detention due to the nature of his criminal convictions.

The Third Circuit's decision in *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 210–11 (3d Cir. 2020), governs Petitioner's claim and request for an individualized bond hearing. In that case, the Court clarified that its due process analysis in *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015), and *Diop v. ICE/Homeland Security*, 656 F.3d 221 (3d Cir. 2011), survives the Supreme Court's 2018 decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). *German Santos*, 965 F.3d at 210 (explaining that *Jennings* "did not touch the constitutional analysis that led *Diop* and *Chavez-Alvarez* to their reading"); *see also Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018) ("*Jennings* did not call into question our constitutional holding in *Diop* that detention under § 1226(c) may violate due process if unreasonably long."); *Ordanny E.G., v. Ortiz*, No. 21-5502, 2021 WL 2910741, at *2 (D.N.J. July 8, 2021). "Therefore, the constitutional analysis in *Diop* and *Chavez Alvarez* is still good law, and those cases govern as-applied challenges under § 1226(c)." *Ordanny*, 2021 WL 2910741, at *2; *see also, e.g., Patrick J. v. Anderson*, No. 20-2665, 2020 WL 7074384, at *2 (D.N.J. Dec. 3, 2020); *Dominic A. v. Anderson*, No. 20-2420, 2020 WL 6636362, at *2 (D.N.J. Nov. 12, 2020).

Under *German Santos*, district courts must consider the following factors when evaluating the constitutionality of prolonged detention under 8 U.S.C. § 1226(c):

> (1) the length of detention in light of the likelihood of whether detention under the statute is likely to continue; (2) the reasons for the delay which caused the petitioner's detention to become prolonged, including whether either party made errors in bad faith or out of carelessness, which unnecessarily prolonged removal the proceedings; and (3) finally whether the conditions of confinement are 'meaningfully different from criminal detention.'

*Ordanny*, 2021 WL 2910741, at *2 (quoting *German Santos*, 965 F.3d at 210–11). The Third Circuit emphasized that the first factor, the length of detention, bears the most weight and is the

most important factor. *German Santos*, 965 F.3d at 211.  Although the Third Circuit rejected a bright-line rule, the Court reaffirmed that when detention becomes so prolonged as to be "unreasonable, the Due Process Clause demands a [bond] hearing." *Id.* at 210.  As to the second factor, if there is no evidence of carelessness or bad faith on either side, that factor may remain neutral. *Id*. at 213.

Courts within this District have held that detention for greater than one year can violate due process. *See e.g.*, *Ordanny*, 2021 WL 2910741, at *3 (16 months); *Patrick J.*, No. 20-2665, 2020 WL 7074384, at *2 (D.N.J. Dec. 3, 2020) (18 months); *Felix S. v. Decker*, No. 20-1414, 2020 WL 1527982, at *4 (D.N.J. Mar. 31, 2020) (14 months); *Charran R. v. Barr*, No. 19-16070, 2020 WL 219872, at *4 (D.N.J. Jan. 14, 2020) (21 months); *Malcolm A. H. v. Green*, 403 F. Supp. 3d 398, 402 (D.N.J. 2019) (14 months); *Pryce v. Green*, No. 18-3501, 2019 WL 2118785, *4 (D.N.J. May 15, 2019) (22 months); *Oscar B. v. Warden, Essex Cty. Corr. Facility*, No. 18-11524, 2019 WL 1569822, at *3 (D.N.J. Apr. 10, 2019) (16 months); *Thomas C. A. v. Green*, No. 18-1004, 2018 WL 4110941, at *5–6 (D.N.J. Aug. 29, 2018) (15 months); *K.A. v. Green*, No. 18-3436, 2018 WL 3742631, at *4 (D.N.J. Aug. 7, 2018) (19 months).

With those principles in mind, Petitioner has been detained pursuant to § 1226(c) for twenty-two months as of the date of this Opinion.  Petitioner's period of detention exceeds the constitutionally suspect one-year threshold in *Chavez-Alvarez*, 783 F.3d at 477.  Additionally, although the BIA denied Petitioner's appeal, Petitioner has appealed that decision to the Third Circuit.  That Court has not yet issued a briefing schedule and has temporarily stayed Petitioner's deportation. (D.E. 9, at 1.)  As such, Petitioner's detention is likely to continue for a period of time that is out of his control.  For all of those reasons, the Court finds that the first factor weighs in Petitioner's favor.

As to the second factor, the parties do not appear to allege that either is responsible for the delays in this case. (*Compare* D.E. 5, at 11, *with* D.E. 7-1, at 9–10). The record also does not suggest that the length of Petitioner's detention was the result of bad faith or carelessness on the part of Petitioner or the Government. Although the parties did not directly address the issue, because Petitioner entered ICE custody in March of 2020, the Court would estimate that the COVID-19 pandemic contributed at least some delay in Petitioner's immigration proceedings. Accordingly, the Court finds that the second factor is neutral. *See German Santos*, 965 F.3d at 210–12.

As to the final factor, ICE has housed Petitioner in three different facilities. First, Petitioner's conditions of confinement at the ECCF from March of 2020 through July of 2021, were "not meaningfully distinguishable from criminal punishment, particularly in light of the ongoing COVID-19 pandemic." *See Ordanny*, 2021 WL 2910741, at *3. Rather than address the conditions at the ECCF, the Government focused on Petitioner's transfer to the Glade County Detention Center ("GCDC"), in Moore Haven, Florida, in July of 2021. The Government then refers to the declaration of Supervisory Detention and Deportation Officer, Alvin L. Vincent, which described the conditions at GCDC, and then summarily concludes that Petitioner's confinement is "meaningfully different" from criminal punishment. (D.E. 5, at 12.)

That declaration, however, does not distinguish between the conditions of ICE detainees and regular inmates. (D.E. 5-3.) In contrast, Petitioner declared that GCDC housed him with "50-60 people in [a] dorm which is a mix of people in immigration custody and people waiting for their criminal cases." (D.E. 4-1, at ¶ 2.) GCDC also restricts the movement of immigration detainees, permitting them "to use the recreation yard for one hour each day" and the "the law library for

five hours each week." (*Id*. at ¶ 8.)  Petitioner also contends that GCDC requires immigration detainees to wear uniforms and assigns them inmate numbers. (*Id*.)

In October of 2021, however, ICE transferred Petitioner to the Krome Detention Center ("KDC"), in Miami, Florida. (D.E. 8-2, at ¶ 2.)  Petitioner submitted a declaration regarding the conditions at the KDC, (D.E. 8-2), but the Government did not file a declaration in response.  At the KDC, ICE holds Petitioner in a medical segregation unit, detaining him alone, and locked in a cell for 23 hours each day. (*Id*. at ¶ 2.)  The facility permits him to go to the recreation yard for one hour alone, with a guard. (*Id*.)  The facility also limits his computer access to 30 minutes each day and restricts his ability to access other services. (*Id*. at ¶ 4.)  Further, Petitioner contends that the facility requires him to wear a uniform, handcuffs, and shackles. (*Id*.)  Taken together, the Court finds that the conditions of Petitioner's confinement in each of the three facilities were and are not meaningfully different from criminal punishment.  As a result, the last factor weighs in Petitioner's favor.

Accordingly, the Court concludes that the *German Santos* factors weigh in Petitioner's favor and that his twenty-two-month detention is unreasonable.  The Court will grant the Petition and direct the Government to provide Petitioner with a bond hearing before an immigration judge, where the Government bears the burden of proof to justify detention by clear and convincing evidence. S*ee German Santos*, 965 F.3d at 213 ("We have already held that the Government bears the burden of proof. That burden, we now hold, is to justify detention by clear and convincing evidence.").

### III.   CONCLUSION

For the reasons discussed above, the Court will grant the Petition and direct the Government to provide Petitioner with an individualized bond hearing before an immigration

judge within twenty-one days of the date of the accompanying Order. An appropriate Order accompanies this Opinion.

  1/20/22
Date:                                               JOHN MICHAEL VAZQUEZ
                                                    United States District Judge